2012-1402, -1403

# United States Court of Appeals

## *for the* FEDERAL CIRCUIT

---

**CHEMSOL, LLC**

*and*

**MC INTERNATIONAL, LLC,**

Plaintiffs-Appellants,

*v.*

**UNITED STATES OF AMERICA**

*and*

**U.S. CUSTOMS & BORDER PROTECTION,**

Defendants-Appellees.

---

Appeals from the U.S. Court of International Trade, Nos. 11-cv-516, -517,
Chief Judge Donald C. Pogue

---

**PRINCIPAL BRIEF OF APPELLANTS, CHEMSOL, LLC
AND MC INTERNATIONAL, LLC**

---

George W. Thompson
   *Counsel of Record*
Russell A. Semmel
NEVILLE PETERSON LLP
1400 Sixteenth Street, N.W., Suite 350
Washington, DC 20036
(202) 861-2959
Fax: (202) 861-2924
gthompson@npwdc.com

August 26, 2013

FORM 9.   Certificate of Interest

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CHEMSOL, LLC _____ v. UNITED STATES _____

No. 2013-1402, -1403

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party) appellants _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

ChemSol, LLC;

MC International, LLC

_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Same

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

_____

4.  ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

NEVILLE PETERSON LLP (Russell A. Semmel)

_____

May 20, 2013 _____         /s/ George W. Thompson _____
            Date                                        Signature of counsel

                                        George W. Thompson _____
                                              Printed name of counsel

Please Note: All questions must be answered

cc: _____

# TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTEREST. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF RELATED CASES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT—The Court of International Trade's Judgment of Dismissal Must Be Reversed Because 28 U.S.C. § 1581(i) Confers Subject-Matter Jurisdiction over This Action Upon That Court. . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.     The Trial Court Opinion Is Contrary to This Court's Recent *Ford* Case Because They Contain Materially Identical Fact Patterns and Legal Issues but Yield Opposite Results. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.    The Court of International Trade Has Subject-Matter Jurisdiction over Appellants' Claims Under 28 U.S.C. § 1581(i) Because No Other Basis of Jurisdiction Is Available and Adequate. . . . . . . . . . . . . . . . . . . . . . . . 18

       A.     Jurisdiction Under 28 U.S.C. § 1581(a) Is Not Available Because CBP Has Not Made and Might Never Make a Protestable Decision. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

       B.     Jurisdiction Under 28 U.S.C. § 1581(a) Is Manifestly Inadequate Because It Cannot Remedy the Specific Injury of Which Appellants Complain. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Chemsol, LLC et al. v. United States et al.*,
    Slip Op. 13-35 (Ct. Int'l Trade Mar. 20, 2013). . . . . . . . . . . . . . . . . . . . . . 1a

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Advanced Cardio. Sys. v. SciMed Life Sys.*,
  988 F.2d 1157 (Fed. Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Am. Air Parcel Forwarding Co. v. United States*,
  718 F.2d 1546 (Fed. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Can. Wheat Bd. v. United States*,
  641 F.3d 1344 (Fed. Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Catawba Indian Tribe of S.C. v. United States*,
  982 F.2d 1564 (Fed. Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Dow Chem. Co. v. United States*,
  647 F. Supp. 1574 (Ct. Int'l Trade 1986). . . . . . . . . . . . . . . . . . . . . . . . . 21

*E. Edelmann & Co. v. Triple-A Specialty Co.*,
  88 F.2d 852 (7th Cir. 1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Ford Motor Co. v. United States*,
  286 F.3d 1335 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

*Ford Motor Co. v. United States*,
  716 F. Supp. 2d 1302 (Ct. Int'l Trade 2010),. . . . . . . . . . . . . 6, 10, 11, 14, 15
  *rev'd in part*, *vacated in part*, 688 F.3d 1319 (Fed. Cir. 2012). . . . . . . . . passim

*Ford Motor Co. v. United States*,
  806 F. Supp. 2d 1328 (Ct. Int'l Trade 2011). . . . . . . . . . . . . . 17, 30-32, 34, 35

*Fujitsu Gen. Am., Inc. v. United States*,
  110 F. Supp. 2d 1061 (Ct. Int'l Trade 2000),. . . . . . . . . . . . . . 17, 21, 32, 34
  *aff'd*, 283 F.3d 1364 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gilda Indus. v. United States*,
  622 F.3d 1358 (Fed. Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hartford Fire Ins. Co. v. United States*,
  544 F.3d 1289 (Fed. Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 24

*Henke v. United States*,
  60 F.3d 795 (Fed. Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Int'l Custom Prods., Inc. v. United States*,
  467 F.3d 1324 (Fed. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

*JCM, Ltd. v. United States*,
  210 F.3d 1357 (Fed. Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Juice Farms, Inc. v. United States*,
     68 F.3d 1344 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 34

*Koyo Corp. v. United States*,
     497 F.3d 1231 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Luckenbach S.S. Co. v. United States*,
     312 F.2d 545 (2d Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*MedImmune, Inc. v. Genentech, Inc.*,
     549 U.S. 118 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Miller & Co. v. United States*,
     824 F.2d 961 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 26

*Mitsui & Co. (U.S.A.) v. United States*,
     881 F. Supp. 605 (Ct. Int'l Trade 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Nat'l Corn Growers Ass'n v. Baker*,
     840 F.2d 1547 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Nippon Steel Corp. v. United States*,
     219 F.3d 1348 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Norcal/Crosetti Foods v. United States*,
     963 F.2d 356 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Norman G. Jensen, Inc. v. United States*,
     687 F.3d 1325 (Fed. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Norsk Hydro Can., Inc. v. United States*,
     472 F.3d 1347 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 26

*Playtex Prods., Inc. v. Procter & Gamble Co.*,
     400 F.3d 901 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Shah Bros. v. United States*,
     770 F. Supp. 2d 1367 (Ct. Int'l Trade 2011) . . . . . . . . . . . . . . . . . . . . . . 26

*Shakeproof Indus. Prods. Div. of Ill. Tool Works v. United States*,
     104 F.3d 1309 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Totes-Isotoner Corp. v. United States*,
     594 F.3d 1346 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*U.S. Cane Sugar Refiners' Ass'n. v. Block*,
     683 F.2d 399 (C.C.P.A. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*U.S. Shoe Corp. v. United States*,
     114 F.3d 1564 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Cherry Hill Textiles, Inc.*,
    112 F.3d 1550 (Fed. Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32-34

*United States v. Uniroyal, Inc.*,
    687 F.2d 467 (C.C.P.A. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Volkswagen of Am., Inc., v. United States*,
    532 F.3d 1365 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Xerox Corp. v. United States*,
    423 F.3d 1356 (Fed. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## Statutes & Session Laws

19 U.S.C. § 1401 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

19 U.S.C. § 1500 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

19 U.S.C. § 1504 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 10, 25, 26

19 U.S.C. § 1514 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18, 29

19 U.S.C. § 1515 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1295 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1581 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 18

28 U.S.C. § 1582 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

28 U.S.C. § 2637 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

28 U.S.C. § 2639 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Customs Procedural Reform and Simplification Act of 1978, Pub. L.
    No. 95-410, 92 Stat. 888. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L.
    No. 108-429, 118 Stat. 2434. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## Regulations

19 C.F.R. § 159.11 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

19 C.F.R. § 159.12 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## Other Authorities

H.R. Rep. No. 95-1517 (1978) (Conf. Rep.). . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

S. Rep. No. 108-28 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

S. Rep. No. 95-778 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-30

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Rule 47.5 of the U.S. Court of Appeals for the Federal Circuit (CAFC), counsel for appellants ChemSol, LLC ("Chemsol") and MC International, LLC, doing business as Miami Chemical (MCI), states that no other appeals in or from this civil action in the lower court were previously before this or any other appellate court. The case *MC International, LLC v. United States*, No. 13-51 (Ct. Int'l Trade filed Jan. 28, 2013), in which MCI has challenged the denial of a protest against reliquidation with assessment of antidumping and countervailing duties of certain entries of the same merchandise concerned in these appeals contrary to suspension instructions, might be directly affected by this Court's decision in these appeals. Aside from the case noted above, no case is known to counsel to be pending in this or any other court that will directly affect or be directly affected by this Court's decision in these appeals.

## STATEMENT OF JURISDICTION

Appellants ChemSol, LLC ("Chemsol") and MC International, LLC, doing business as Miami Chemical (MCI), appeal from *Chemsol, LLC et al. v. United States et al.*, Slip Op. 13-35 (*JA 1a–18a*) (the "*Opinion*"), a final decision of the U.S. Court of International Trade (CIT) dated March 20, 2013. Appellants timely filed notices of appeal on May 8, 2013; the appeals were docketed on May 14. This Court has jurisdiction over the appeals pursuant to 28 U.S.C. § 1295(a)(5) (1999).

## STATEMENT OF THE ISSUE

The issue presented is whether the CIT has subject-matter jurisdiction under 28 U.S.C. § 1581(i) over Appellants' claims that their customs entries, which have not been affirmatively liquidated, have been liquidated by operation of law.

## STATEMENT OF THE CASE

These appeals are taken from *Chemsol, LLC v. United States*, Slip Op. 13-35, in which the CIT granted the motion of appellees the United States and U.S. Customs and Border Protection ("CBP" or "Customs") and its various officers (collectively, the "Government") to dismiss Appellants' complaints for lack of subject-matter jurisdiction. Appellants commenced these cases to seek a declaration that their customs entries, which CBP had not affirmatively liquidated, had been liquidated by

1

operation of law at the amount of duty asserted by the importer upon entry; and an order permanently enjoining CBP from affirmatively liquidating the entries in the future with an increased duty assessment. CBP had extended the deadline on which the entries would liquidate by default, but, Appellants alleged, had no lawful basis for doing so; therefore, the extensions were void, and the liquidation period had long elapsed. The CIT nonetheless granted the Government's motion, reasoning that once CBP does affirmatively liquidate the entries, Appellants will be able to follow the administrative protest procedure to challenge the propriety of CBP's extensions.

Appellants herein argue that the CIT first and foremost failed to follow this Court's controlling recent precedent, which the CIT misreads, misunderstands, or simply ignores. Moreover, the CIT perverts a longstanding exhaustion doctrine by which that court is understood not to have jurisdiction over a claim that can be or could have been a basis of administrative protest instead unless to protest would have been inadequate. There has never been a decision for Appellants to protest, nor might there ever be, and any duty refunds a protest could realize nonetheless cannot relieve the injury Appellants suffer, namely the uncertainty of liability to the Government.

## STATEMENT OF FACTS

Liquidation is the final computation and ascertainment of the duties due on an entry of imported merchandise. Ordinarily, CBP must affirmatively liquidate a

consumption entry within one year of the entry date, lest the entry be "deemed liquidated" at the rate of duty, value, quantity, and amount of duties asserted in the entry by the importer by operation of section 504(a) of the Tariff Act of 1930, 19 U.S.C. § 1504(a) (2004).  Upon proper notice to the importer and with legitimate reasons, however, CBP may act, in accordance with section 504(b) of the Tariff Act, *id.* § 1504(b) as implemented by section 159.12 of CBP's regulations, 19 C.F.R. § 159.12 (2011), to extend the liquidation period in intervals not to exceed one year, but not beyond four years from the date of entry, before the entry is deemed liquidated.

After CBP makes an affirmative liquidation of the entry that assesses the importer more than the importer deposited at entry, the importer must protest that decision before CBP within 180 days.  19 U.S.C. § 1514(a)(5), (c)(3) (2011).  If and when CBP denies the protest, whether affirmatively or by operation of law, § 1515(a) (2004) grants the importer the right to file a judicial challenge to the denial.  28 U.S.C. § 1581(a) vests the CIT with "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part," under this procedure.

Appellants Chemsol and MCI are U.S. chemical importers that no later than March 28, 2010 made fifteen relevant consumption entries—five by Chemsol, ten by MCI—covering such merchandise at the Port of Houston, Texas, claiming duty-free

treatment for the merchandise covered thereby under eligible tariff preferences.[1] (Chemsol Compl. ¶¶ 19–20; MCI Compl. ¶¶ 22–24.) Through the issuance of several requests for information and notices of action to Appellants (Chemsol Compl. ¶¶ 21, 26, 27; MCI Compl. ¶¶ 25, 27, 30), CBP suggested—to MCI, at least—that it was investigating whether Appellants' manufacturers were involved in transshipment of merchandise potentially subject to certain antidumping or countervailing orders (*id.* ¶ 30), which would be reflected as additional duties in a future liquidation. In the meanwhile and until these cases were commenced, CBP issued summary extensions of the liquidation periods twice for each of those entries. (Chemsol Compl. ¶¶ 22, 25, 28, 30; MCI Compl. ¶¶ 26, 29, 31, 34, 36, 37.) *See Opinion* at 5 n.6.

Appellants, believing CBP's actions extending the liquidation periods to be unlawful and void, commenced these cases separately under 28 U.S.C. § 1581(i), the CIT's residual jurisdiction. (Chemsol Compl. ¶¶ 1, 3, 8, 42, 57; MCI Compl. ¶¶ 1, 3, 8, 63, 75.) By this avenue, Appellants sought to obtain (1) a judicial declaration pursuant to 28 U.S.C. §§ 2201(a) and 2643(c)(1) that their entries are deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted by Appellants therein as of the one-year anniversary of the respective entry or most recent valid extension, if any, of the liquidation period therefor (Chemsol Compl. ¶¶ 1,

---

[1] One additional Chemsol entry and three additional MCI entries encompassed in their complaints have since "auto-liquidated" duty-free; the parties and CIT agree that claims thereon are now moot. *See Opinion* at 7.

4, 32, 33, A, B; MCI Compl. ¶¶ 1, 4, 49, 50, A, B); and (2) a permanent injunction pursuant to § 2643(c)(1) against CBP from affirmatively liquidating the entries in the future (Chemsol Compl. ¶¶ 1, 61, C; MCI Compl. ¶¶ 1, 80, C). The Government moved to dismiss the complaints for lack of subject-matter jurisdiction.[2] *Opinion* at 6. According to the Government, Appellants could not "assert § 1581(i) jurisdiction but rather must wait until Customs affirmatively liquidates the entries and then file a protest and subsequently seek review of any denial of the protest pursuant to 28 U.S.C. § 1581(a)." *Ibid.*

The CIT, in a single opinion by Chief Judge Donald C. Pogue that addressed both cases, granted the Government's motion to dismiss for lack of subject-matter jurisdiction, holding that because the administrative protest and judicial review process under § 1581(a) "provides an adequate remedy for [Appellants'] claims," the court could not entertain the claims under § 1581(i). *Id.* at 2. The court explained that to avoid the protest process, Appellants must show that the remedy available thereunder is inadequate. *Id.* at 9. In these cases, said the court, in lieu of challenging the extensions themselves, Appellants would have the opportunity after liquidation to address those extensions in a challenge to the denial of an administrative protest against them, which "provides a complete and adequate remedy for any challenge to

---

[2] The Government also moved as an alternative for failure to state a claim upon which relief can be granted, which the decision did not address. *Opinion* at 6, 17.

Customs' extensions after liquidation is complete." *Id.* at 10. Because "[t]he matter can be brought under § 1581(a) after the Plaintiffs' entries have liquidated and Plaintiff [*sic*] has filed an administrative protest, should it continue to feel at that point in time that it has been injured," it is "apparent that this Court should not entertain Plaintiffs' complaint here under § 1581(i)." *Id.* at 13. The court observed that Appellants "cannot claim that the § 1581(a) remedy is manifestly inadequate as there is no meaningful assertion of harm in letting Customs process and liquidate their entries." *Ibid.*[3] Appellants appealed to this Court for review.

## SUMMARY OF THE ARGUMENT

1. The Court of International Trade's opinion is contrary to decisions of this Court. The CIT denies that it has § 1581(i) jurisdiction over Appellants' claims, which seek a declaratory judgment that the entries have been deemed liquidated and a permanent injunction against CBP from affirmatively liquidating the entries. In *Ford Motor Co. v. United States*, 688 F.3d 1319 (Fed. Cir. 2012) ("*Ford 2012 II*"), *rev'g in part and vacating in part* ("*Ford 2012 I*") 716 F. Supp. 2d 1302 (Ct. Int'l Trade 2010), however, this Court ruled that an importer's claim "for declaratory

---

[3] As of this date these suits were commenced, CBP had given no indication of when, or whether, the agency might affirmatively liquidate the entries with an increase in duties. Since the CIT decision was issued, CBP has indicated its intention to begin the liquidations, but it is unclear whether any has actually taken place as of the date of this Brief.

judgment that CBP had failed to liquidate in the time required by law . . . was a valid invocation of the [CIT's] residual jurisdiction" under § 1581(i) "as the importer could not have asserted jurisdiction under any of the other enumerated provisions of § 1581." The CIT opinion holds that § 1581(a) jurisdiction is nonetheless available and adequate here based on a distinction that the "true nature" of Appellants' claims is to challenge the extensions' validity whereas Ford's claims challenge the extensions' existence. This position is both factually incorrect and of dubious reasoning, and places that inferior court at odds with Circuit precedent. It also contravenes that court's previously-stated understanding of its jurisdiction.

2. The Court of International Trade has subject-matter jurisdiction over Appellants' claims under 28 U.S.C. § 1581(i). Congress has recognized that importers have the distinct right to finality in the disposition of their entries and certainty in the determination of their liabilities to the Government. These rights vested in Appellants as of the date on which the entries were deemed liquidated. Appellants have suffered, and continue to suffer, injury to these rights by CBP's open-ended, presumptively valid assertion of authority over their entries beyond that date, even though that authority was extinguished by operation of law. This Court has confirmed that an importer may request recognition that an entry has been deemed liquidated by declaratory judgment under § 1581(i) jurisdiction, so long as the importer does not have another available and adequate basis under § 1581 at or before commencement

of the case. The CIT held that here jurisdiction under § 1581(a) is also attainable through the protest process; but, to the contrary, that basis is not and was never available because no protestable decision had been made at the time that the cases were commenced, and could never be adequate because it provides only for reliquidation as relief, and thus cannot remedy the specific injury for which Appellants seek redress. The holding violates the longstanding time-of-filing rule to measure a court's jurisdiction, permits CBP to abuse the liquidation process, and weakens the prophylaxis that declaratory judgment is meant to provide.

## STANDARD OF REVIEW

An appellate court reviews a lower court's dismissal for lack of subject-matter jurisdiction *de novo*. *Ford 2012 II*, 688 F.3d at 1322–23; *Juice Farms, Inc. v. United States*, 68 F.3d 1344, 1345 (Fed. Cir. 1995). Review *de novo* implies that the appellate court owes no deference to the trial court. *Accord Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 906 (Fed. Cir. 2005); *Advanced Cardio. Sys. v. SciMed Life Sys.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993). For the purposes of determining subject-matter jurisdiction on a motion to dismiss, a court must accept all factual allegations as true and draw all reasonable inferences in the plaintiffs' favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995); *Catawba Indian Tribe of S.C. v. United States*, 982 F.2d 1564, 1568-69 (Fed. Cir. 1993).

## ARGUMENT

**The Court of International Trade's Judgment of Dismissal Must Be Reversed Because 28 U.S.C. § 1581(i) Confers Subject-Matter Jurisdiction over This Action Upon That Court.**

The issue in these appeals is whether an importer may bring an action in the CIT for judicial confirmation that an entry has liquidated by operation of law, *i.e.*, has been "deemed liquidated," pursuant to 19 U.S.C. § 1504(a)(1).[4]  Appellants sought such a declaration by invoking 28 U.S.C. § 1581(i), which empowers and requires the CIT to hear "any civil action commenced against the United States . . . that arises out of any law of the United States providing for," *inter alia*, the "administration and enforcement" of customs matters, *id.* § 1581(i)(4).  This "catch all provision" is known as the CIT's "residual jurisdiction," affording a basis of jurisdiction regarding customs disputes where there is no comfortable fit under any of that court's enumerated bases. *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1291–92 (Fed. Cir. 2008).  Section 1581(i) offers an affirmative avenue to the court where an importer, after the liquidation period has uneventfully elapsed, can, without more than the confidence that the entry was deemed liquidated, go straight to court for a judicial

---

[4] 19 U.S.C. § 1504(a)(1) states, in relevant part: "Unless an entry of merchandise for consumption is extended under subsection (b) of this section . . . an entry of merchandise for consumption not liquidated within 1 year from . . . the date of entry of such merchandise . . . shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted by the importer of record. Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated."

declaration that such liquidation has occurred, and thereby forestall an improper subsequent affirmative liquidation by CBP. That is just what Appellants have done, to avail themselves of the repose of § 1504(a).

Just last year, as the Government's motion to dismiss was undergoing briefing before the CIT below, this Court in *Ford 2012 II*, *supra*, 688 F.3d 1319, decided this very issue in Appellants' favor. That ruling held that an importer need not await an affirmative and arguably improper liquidation, which may issue at some unspecified future date, if at all, to seek a declaratory judgment that the entry is deemed liquidated. Its logic directly informs these facts, is dispositive of the case at bar, and should have bound the court below.

**I.      The Trial Court Opinion Is Contrary to This Court's Recent *Ford* Case Because They Contain Materially Identical Fact Patterns and Legal Issues but Yield Opposite Results.**

In *Ford 2012*, the importer Ford Motor Co. ("Ford"), discovering that its duty deposits were too high, filed multiple reconciliation entries to get a refund of the excess.[5] *Ford 2012 II*, 688 F.3d at 1321. Years later, after CBP purported to extend the liquidation period for those entries, Ford sued CBP for confirmation that the entries had been deemed liquidated, and for payment of the refund. *Id.* at 1321–22.

---

[5] Reconciliation entries are in all material ways identical to consumption entries. *Ford 2012 I*, 716 F. Supp. 2d at 1306; *see* 19 U.S.C. §§ 1401(s) (2004) ("A reconciliation is treated as an entry for purposes of liquidation, reliquidation, recordkeeping, and protest."), 1504(a)(1)(A), (D).

Asserting that all the entries "should have been deemed liquidated one year from the date of filing," *Ford 2012 I*, 716 F. Supp. 2d at 1307, Ford filed under § 1581(i) seeking declaratory judgment to that effect.  Ford raised, *inter alia*, four successive claims—that (1) CBP had not extended the liquidation periods for the entries; (2) assuming CBP had extended the liquidation periods, "CBP did not issue notice of any extensions"; (3) if CBP did issue notice, "it did not provide Ford with any reasons for extending"; and (4) even if CBP did provide reasons, it "had no statutorily valid reason for extending."  *Ibid.*  The Government moved to dismiss for lack of subject-matter jurisdiction on the grounds that the claims were not yet ripe and jurisdiction over the entries was "only appropriate via § 1581(a)."  *Id.* at 1308.  CBP had by then, post-complaint, affirmatively liquidated six of the entries, which the court dismissed for lack of § 1581(i) jurisdiction.  *Id.* at 1309.  As to the remaining entries, the court found that claims two, three, and four were ripe and could be heard under § 1581(i), *id.* at 1311–12, but declined to issue declaratory judgment on discretionary grounds, *id.* at 1314.

Reviewing *de novo*, this Court partially reversed and partially vacated the decision, ruling entirely in Ford's favor.  First, this Court reversed the dismissal as to the entries liquidated post-complaint.  *Ford 2012 II*, 688 F.3d at 1328.  The Court reasoned simply that "at the time Ford initiated this lawsuit, none of these liquidations had yet occurred.  Ford could not, therefore, have exhausted the administrative

remedies necessary to establish jurisdiction under § 1581(a)." *Id.* at 1323–24. Following the rule that jurisdiction is determined at the time of filing, the court stated that "where the jurisdictional question is really a question of exhaustion, a defendant cannot defeat jurisdiction by simply creating a new avenue for exhaustion of administrative remedies that had not been available at the time of the original filing." *Id.* at 1326. The court then vacated the discretionary refusal to issue declaratory judgment, noting that the CIT's reasoning behind the refusal "extended in significant part from its flawed jurisdictional analysis." *Id.* at 1330.[6] In short, this Court held that the CIT had subject-matter jurisdiction under § 1581(i) over every entry that the parties continued to dispute. *Id.* at 1328, 1330.

The fact pattern and legal issues now before the Court are all but identical to *Ford 2012* in every material way. In both cases, the importer asserted that CBP purported to extend liquidation for certain entries, and notice thereof was issued, but either no reason or an invalid reason was given for the extensions, thereby rendering them void—and asserted that jurisdiction was likewise proper under § 1581(i). There is no reason that the outcomes should differ. The CIT here, however, attempted to distinguish *Ford 2012* from the matter at bar, despite recognizing that *Ford 2012* stands for the proposition that § 1581(i) jurisdiction is "appropriate for a deemed

---

[6] The CAFC also reversed the dismissal for mootness of claim one, in a portion not relevant here. 688 F.3d at 1328.

liquidation claim," *Opinion* at 11. The opinion below did so by dubiously surmising that "the true nature" of Appellants' actions "is a challenge to Customs' extensions of the time for liquidation," *id.* at 9, for which "§ 1581(a) provides a complete and adequate remedy," *id.* at 10, whereas in *Ford 2012*, "the true nature of the Plaintiff's claim was a challenge seeking a declaration that Customs' inaction had caused the entries to be deemed liquidated," *id.* at 12, which "§ 1581(a) jurisdiction was inadequate to address," *id.* at 11. There are three problems with this.

First, the perceived divergence in the claims' "true nature" is pure *ipse dixit*. The nature of the claims is one and the same, in that both seek a declaration of deemed liquidation due to the lack of a valid extension—whether the extension is invalid because it was unlawfully issued or because it was never made at all. The CIT lifted the instruction to look at the "true nature" of the claim from *Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1354–55 (Fed. Cir. 2006), which cautioned that "artful pleading," such an intentional failure to plead a fact or issue that would alter the jurisdictional analysis, cannot render a claim jurisdictionally sound. That admonition is inapplicable here, where Appellants are neither hiding nor have anything to hide that would obscure the nature of the claim, and have been explicit from the outset about their theory. Appellants' entries were deemed liquidated because CBP's intended extensions were faulty and ineffective, just as in *Ford 2012*.

Secondly, the factual support offered for that distinction is fallacious. "Notably," the CIT opinion below reads, "the Plaintiff's Complaint in Ford alleges that Customs did not extend the liquidation period whereas here, both Plaintiffs acknowledge that Customs acted to extend the liquidation period," citing a single paragraph of Ford's complaint. *Opinion* at 12. This is cherry-picking at its plainest, ignoring the remainder of Ford's complaint. *Ford 2012 I* did note that Ford first asserted in its complaint that none of its entries was extended, but the next sentences trace Ford's second, third, and fourth claims that assume that CBP did issue extensions, but lacked notice, reasoning, or validity. 716 F. Supp. 2d at 1307 (citing to individual paragraphs of Ford's complaint). This Court had the same understanding that in addition to claiming there was no extension, Ford "pled numerous other 'causes of action' seeking the same relief (declaratory judgment of liquidation) on alternative legal theories," and listed claims two through four successively. *Ford 2012 II*, 688 F.3d at 1329. Coincidentally, the *only* claim that the CIT dismissed in its entirety—which this Court reinstated—is the claim on which the opinion below now focuses to the disregard of the others. *Ford 2012 I* at 1311 ("This Court has jurisdiction under 28 U.S.C. § 1581(i) to hear Plaintiff's claims two, three, and four, and to issue declaratory relief with respect to Entries G, H, I, and J.").

The CIT's opinion below, in addition to selectively reading *Ford 2012*, is simply wrong. It states that this "Court of Appeals, in [*Ford 2012 II*], did not face a

scenario such as that presented here, where Plaintiffs acknowledge that Customs has taken affirmative action to extend the liquidation time period." *Opinion* at 12. Appellants are at a loss as to how the court below developed that understanding of the facts and posture of *Ford 2012*. *Ford 2012 I* stated, regarding Ford's four entries not liquidated post-complaint, that "[w]hile there is no longer a controversy as to whether or not Entries G–J were extended, Plaintiff continues to maintain in claims two, three, and four that these extensions were somehow faulty." 716 F. Supp. 2d at 1311. It concluded, "That controversy falls within the Court's jurisdiction because this case is a civil action that has been commenced against the United States, arising out of laws of the United States providing for the administration of tariffs, namely, 19 U.S.C. §§ 1500, 1504. All of the requisite components to exercise jurisdiction and render a declaratory judgment are therefore in place." *Ibid.*[7] The breadth of this statement encompasses the factual situation raised by Appellants in their cases.

Finally, in any event, this is a distinction without a difference for the purpose of establishing jurisdiction. Whether the entries were or were not deemed

---

[7] That the CIT either confused or ignored *Ford 2012* is no more manifest than in the question it posed to the Government at oral argument of how much more time CBP would need to liquidate the entries. *Opinion* at 6–7. The very holding, and the lion's share of the analysis, in *Ford 2012 II* is that the answer to that question is completely irrelevant for the purposes of assessing jurisdiction. 688 F.3d at 1326 ("[A] defendant cannot defeat jurisdiction by simply creating a new avenue for exhaustion of administrative remedies that had not been available at the time of the original filing.").

liquidated—which is dependent upon whether extensions were or were not issued, lawfully or at all—is a matter to be decided on the merits.  In response to the Government's position that Ford's entries were properly extended, the CAFC stated,

> [A]rguments concerning the merits of Ford's claims are not appropriate for this jurisdictional inquiry. It is well-established that a court's subject matter jurisdiction concerns its authority to take up a case, and not the case's ultimate resolution. Ford invoked the Court of International Trade's authority by alleging unlawful action by CBP that could not be remedied with a lawsuit under § 1581(a)–(h). The government's protest that Ford is not actually entitled to relief in this case can be taken up on a motion to dismiss for failure to state a claim on which relief can be granted or on summary judgment—not on a motion to contest jurisdiction.

*Ford 2012 II*, 688 F.3d at 1328 (citations omitted).  The CIT below in its opinion ostensibly was addressing only whether Appellants have a forum before the CIT in which to have its merits considered, not the merits themselves, but Appellants note that the opinion is replete with instances where the merits cart precedes the jurisdiction horse.  *See Opinion* at 13–14 (questioning whether CBP's failure to request further information from Appellants demonstrates that CBP did not meet the statutory justification for extending the liquidation period), 14 (discussing the Government's alleged reasons for CBP's extensions), 14–15 (noting CBP's broad discretion to extend liquidation and its presumption of correctness).  These points have no bearing on whether the CIT has jurisdiction.  "Regardless of whether [Appellants are] ultimately entitled to declaratory judgment in [their] favor, [they] are

entitled to judicial review under 28 U.S.C. § 1581(i)." *Ford Motor Co. v. United States* ("*Ford 2011*"), 806 F. Supp. 2d 1328, 1337 (Ct. Int'l Trade 2011).

It is worth noting that, the propriety of using § 1581(i) to entertain deemed liquidation claims has not always been lost on the lower court. In his opinion below, now-Chief Judge Pogue understands that CBP had not affirmatively liquidated the entries, and Appellants "seek[] declaratory relief stating that the entries have been deemed liquidated pursuant to 19 U.S.C. § 1504(a)," *Opinion* at 5, yet finds that the CIT cannot entertain the complaint under § 1581(i). But this is in remarkable, direct contrast to an opinion of then-Judge Pogue thirteen years ago, who explained,

> [W]here an importer believes its entries were deemed liquidated under § 1504(d), and Customs has not actively liquidated the entries anew, the importer's only remedy, at that point, is to seek a declaratory judgment from the CIT confirming that there was a deemed liquidation under 28 U.S.C. § 1581(i).

*Fujitsu Gen. Am., Inc. v. United States* ("*Fujitsu I*"), 110 F. Supp. 2d 1061, 1069 (Ct. Int'l Trade 2000), *aff'd* ("*Fujitsu II*"), 283 F.3d 1364 (Fed. Cir. 2002); and conversely,

> In a situation where Customs has not yet actively liquidated entries that an importer believes had already been deemed liquidated under § 1504, the importer could invoke the CIT's jurisdiction under 28 U.S.C. § 1581(i) to obtain a declaratory judgment to that effect.

*Fujitsu I* at 1074 n.11. By reversing the decision below, this Court can ensure that the CIT is consistent not just with the Circuit but also with itself.

## II. The Court of International Trade Has Subject-Matter Jurisdiction over Appellants' Claims Under 28 U.S.C. § 1581(i) Because No Other Basis of Jurisdiction Is Available and Adequate.

Appellants have proceeded upon the court's residual § 1581(i) jurisdiction, but the CIT has declined to accept the invocation. The refusal is predicated on the familiar, judicially-crafted limiting doctrine that forbids jurisdiction under § 1581(i) "when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Int'l Custom Prods. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006); *Norcal/Crosetti Foods v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992); *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987). The CIT held that for Appellants' claims § 1581(a) is "available" and "adequate," and thus § 1581(i) is inappropriate. Neither holding is correct, and the full decision threatens dangerous implications.

28 U.S.C. § 1581(a) is the court's protest jurisdiction. *See supra* p. 3. Under that statute, CBP must make a "protestable decision" within the meaning of § 1514(a), *Xerox Corp. v. United States*, 423 F.3d 1356, 1365 (Fed. Cir. 2005), one of which is an adverse "liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either section 1500 of this title or section 1504 of this title," where that decision is adverse to the importer. *Id.* § 1514(a)(5). CBP then "must issue a

decision, the decision must be protested, and the protest must be denied" before proceeding to court. *U.S. Shoe Corp. v. United States*, 114 F.3d 1564, 1569 (Fed. Cir. 1997). 28 U.S.C. § 2637(a) (1980) requires that the additional duties be paid in advance of the filing.

Thus, after a liquidation deadline has passed without action, an importer may wait indefinitely for CBP affirmatively to liquidate an entry with additional duties, protest the liquidation administratively, pay those duties, and challenge the denial of the protest in court, where the importer can then assert deemed liquidation as part of a claim for reliquidation and refund of the excess duties. For instance, in *Ford Motor Co. v. United States* ("*Ford 2002*"),, CBP, after issuing itself three extensions, liquidated the importer's entries with a rate advance in the forty-eighth month; the importer protested, paid the additional duties, and challenged CBP's denial of the protest under § 1581(a). 286 F.3d 1335, 1338–39 (Fed. Cir. 2002). On the merits, the court found the extensions improper and the entries deemed liquidated, *id.* at 1343, after which reliquidation and refunds were ordered. This is the path the CIT would have Appellants now take: "The matter can be brought under § 1581(a) after the Plaintiffs' entries have liquidated and Plaintiff [*sic*] has filed an administrative protest, should it continue to feel at that point in time that it has been injured." *Opinion* at 13.

## A. Jurisdiction Under 28 U.S.C. § 1581(a) Is Not Available Because CBP Has Not Made and Might Never Make a Protestable Decision.

Jurisdiction over the complaints is not "available" via § 1581(a). The CIT's dismissal on these grounds is erroneous because the CIT misapprehends the doctrine and the principles underlying it. This Court has explained that an action under § 1581(i) is foreclosed only when another subsection "is or could have been available," *e.g.*, *Int'l Custom Prods.*, 467 F.3d at 1327, not when another subsection *will be* or *might become* available. There has never been a prospective component. By reading one in, the CIT has created an unwarranted exception to the longstanding time-of-filing principle, which teaches that "the jurisdiction of the Court depends upon the state of things at the time of the action brought." *Mullen v. Torrance*, 22 U.S. 537, 539 (1824). Nor does CBP have an obligation ever to trigger a protestable event; there has never been a speculative component.[8]

In its opinion below, the CIT repeatedly explains that in the future, after an affirmative liquidation takes place at some unspecified time, § 1581(a) would be available. On page 10 alone, the opinion reads (all emphases added), "*Upon*

---

[8] Appellants note that in two instances this Court has used the phrase "would never be available," but avoided ruling on the issue and thus did not develop what that phrase meant. *Nippon Steel Corp. v. United States*, 219 F.3d 1348, 1351 (Fed. Cir. 2000); *Shakeproof Indus. Prods. Div. of Ill. Tool Works v. United States*, 104 F.3d 1309, 1312 (Fed. Cir. 1997). In addition, both involved an attempt to interrupt a statutory Commerce review by interlocutory appeal to the CIT, which is altogether different.

*conclusion of that process and liquidation* of the entries, the importers *will have* ample opportunity to raise any issues through the protest and judicial review process that culminates in § 1581(a)"; "It is therefore clear that the Plaintiffs' challenge to Customs' extensions of the time for liquidation *may be brought, after liquidation*, by filing a protest and obtaining jurisdiction in this court under Section 1581(a)"; and, "Thus § 1581(a) provides a complete and adequate remedy for any challenge to Customs' extensions *after liquidation is complete*." On page 13 (emphasis added), "The matter can be brought under § 1581(a) *after the Plaintiffs' entries have liquidated* and Plaintiff has filed an administrative protest, should it continue to feel *at that point in time* that it has been injured."

Appellants do not disagree that if CBP affirmatively liquidates their entries, they can then engage upon the § 1581(a) path to challenge the extensions of time. *Accord Ford 2002*, *supra*, 286 F.3d 1335; *see Fujitsu I*, 110 F. Supp. 2d at 1074 n.11 ("[o]nce Customs liquidates" it "creat[es] the avenue to jurisdiction under § 1581(a)"). Liquidation is a "protestable decision," *see Fujitsu I* at 1069 ("A Customs decision to liquidate certain entries anew after the entries had already been deemed liquidated is a protestable decision under 19 U.S.C. § 1514(a)(5)."), of which an extension is a feature, *Dow Chem. Co. v. United States*, 647 F. Supp. 1574, 1581 (Ct. Int'l Trade 1986). The argument that an entry was deemed liquidated is grounds for that protest. *Pagoda Trading Corp. v. United States*, 804 F.2d 665, 668 (Fed. Cir. 1986).

But the CIT below is unwilling to say that § 1581(a) *is now* available, or *ever could have been* available, to Appellants. Nor could it, for, to repeat, CBP has made no protestable decision to open that door. A protestable decision is a necessary predicate to the right to file a protest, yet as the facts stood at the time these suits were commenced—which of course are the circumstances and the moment from which a trial court's jurisdiction is measured, *see Keene Corp. v. United States*, 508 U.S. 200, 207 (1993)—no protestable decision, such as liquidation, had occurred to generate an eventual path to the court via § 1581(a). That circumstance has often been the end of the matter for this Court. *E.g.*, *Ford 2012 II*, 688 F.3d at 1328 ("With no administrative action to protest, none of the jurisdictional avenues enumerated in subsections (a) through (h) of § 1581 were available to Ford. These allegations satisfied this court's requirements for the exercise of jurisdiction under subsection (i)(4).").

There are good reasons why this Court has formulated such a restraint against unfettered use of § 1581(i), developed from an effort to further Congress' intent when establishing the CIT. Congress did not intend for private litigants aggrieved by discrete agency action to circumvent the administrative schemes established in the enumerated bases of § 1581, in favor of the residue in subsection (i). *Hartford Fire*, 544 F.3d at 1292; *JCM, Ltd. v. United States*, 210 F.3d 1357, 1359 (Fed. Cir. 2000); *Am. Air Parcel Forwarding Co. v. United States*, 718 F.2d 1546, 1549 (Fed. Cir.

1983).  A litigant's opportunity to shop for the most favorable path to the court, is therefore a legitimate concern against which the judiciary may permissibly safeguard. The trade courts must take care to ensure that a party does not sidestep the exhaustion of administrative remedies, in cases where exhaustion is appropriate.  Moreover, § 1581 actions always involve a government defendant that enjoys sovereign immunity, and that may not be sued except insofar as it has consented to be sued; this Court has an obligation to ensure that § 1581(i) is not used to expand the Government's waiver.[9]  Despite these restrictions, this Court has identified § 1581(i) as the proper jurisdictional basis for a wide range of actions.[10]

However, in every case where this Court has dismissed an action brought under § 1581(i) on the ground that a remedy under a preceding subsection of the statute "is or could have been available," it has pointed to predicates for other bases for

---

[9] As a corollary, a necessary implication of narrowly reading the waiver is to impermissibly contract a court's own mandate. The CIT refuses to accept an action over which Congress clearly intended it to have jurisdiction, which is not within a court's discretion to do. "[F]ederal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358 (1989).

[10] *See, e.g.*, *Can. Wheat Bd. v. United States*, 641 F.3d 1344 (Fed. Cir. 2011) (injunction against liquidation pursuant to binational trade panel ruling); *Gilda Indus. v. United States*, 622 F.3d 1358 (Fed. Cir. 2010) (challenge to U.S. Trade Representative's actions); *Totes-Isotoner Corp. v. United States*, 594 F.3d 1346 (Fed. Cir. 2010) (constitutionality of tariff schedule). In each such case, of course, a basis for waiver of sovereign immunity must be identified, such as the Administrative Procedure Act or, as in these cases, the Declaratory Judgment Act.

jurisdiction which existed *prior to, or at the time*, the complaint was filed.[11]  In each of those cases—regardless of whether jurisdiction was found to be proper under § 1581(a), (b), or (c)—the Court found that the factual predicate for invoking specific bases of jurisdiction, or for starting down the pathway to such jurisdiction, existed as of the time the plaintiff's complaint seeking § 1581(i) jurisdiction was filed.[12]  In the present cases, by contrast, the CIT has gone further, holding that the availability of jurisdiction under §1581(i) does not merely depend on whether relief was, or could have been available, under other provisions of §1581, but also on whether, at some unidentified future date, new facts might arise which could give rise to a different or related dispute cognizable under § 1581(a).  Not only is this an unprecedented departure from this Circuit's § 1581 jurisprudence, it is a remarkable departure from

---

[11] *See, e.g.*, *Norman G. Jensen, Inc. v. United States*, 687 F.3d 1325 (Fed. Cir. 2012) (plaintiff had protested liquidations and could have secured adequate § 1581(a) jurisdiction by seeking accelerated disposition of pending protests); *Hartford Fire*, *supra*, 544 F.3d 1289 (surety had eschewed protest of surety demands that could have led to adequate § 1581(a) protest jurisdiction); *Volkswagen of Am., Inc., v. United States*, 532 F.3d 1365 (Fed. Cir. 2008) (plaintiff had unprotested liquidations which could have led to adequate § 1581(a) jurisdiction); *JCM*, *supra*, 210 F.3d 1357 (party had standing to participate in administrative antidumping proceeding, which provided a pathway for jurisdiction under § 1581(c)); *Nat'l Corn Growers Ass'n v. Baker*, 840 F.2d 1547 (Fed. Cir. 1988) (domestic producers failed to file domestic interested party petition and protest which could have resulted in jurisdiction under 28 U.S.C. § 1581(b)).

[12] Moreover, in determining whether alternate bases of appraisement are or could have been available, the Court considers the nature of the relief sought. *See, e.g.*, *Totes-Isotoner*, *supra*, 594 F.3d 1346. A suit for refunds under § 1581(a) is of an entirely different kind from a suit for declaratory and injunctive relief under § 1581(i).

the time-of-filing rule that courts assess their subject-matter jurisdiction as of the date a complaint is filed.

The fact that "Congress did not intend the Court of International Trade to have jurisdiction over appeals concerning completed transactions when the appellant had failed to utilize an avenue for effective protest," *United States v. Uniroyal, Inc.*, 687 F.2d 467, 471 (C.C.P.A. 1982), does not lead to the conclusion that Congress did not intend for the CIT to hear a claim before an avenue for protest has materialized. And as explained *infra* part II.B., Congress' intent that a litigant be deprived of jurisdiction under § 1581(i) when other bases are available and adequate cannot extend so far as to frustrate an equally clear Congressional intent not to deprive the CIT of § 1581(i) jurisdiction before an affirmative liquidation is made.

There is also no guarantee that there will be an affirmative liquidation in the next four years or forty years—or ever, for that matter. Despite the directive of 19 U.S.C. § 1500(d) (1993) that CBP "shall" liquidate an entry, Congress has imposed no *enforceable* requirement on CBP ever to liquidate an entry affirmatively. The only consequence of such a failure is that the entry becomes deemed liquidated, by operation of law, "at the rate of duty, value, quantity, and amount of duty asserted by the importer of record," *id.* § 1504(a)(1), one year after the date of the entry. Where the liquidation period is validly extended, the entry will be deemed liquidated after four years from the date of entry, *id.* § 1504(b). Deemed liquidation does not even

require notice from CBP to be effective under statute. *Id.* § 1504(a)(1). So there may never be an affirmative liquidation, or recognition of a deemed liquidation, to protest. And although a deemed liquidation is itself protestable, *Koyo Corp. v. United States*, 497 F.3d 1231, 1237 (Fed. Cir. 2007), Appellants, having declared the entries duty-free, would have no ability to acquire certainty through that route, for the deemed liquidation would never be adverse to them. *See Norsk Hydro*, *supra*, 472 F.3d at 1362 (stating that "a deemed liquidation *adverse* to an importer is protestable" (emphasis added)). This potentially infinite oversight of an entry is the reason Congress fashioned the concept of deemed liquidation.

## B. Jurisdiction Under 28 U.S.C. § 1581(a) Is Manifestly Inadequate Because It Cannot Remedy the Specific Injury of Which Appellants Complain.

The unavailability of § 1581(a) should end the jurisdictional inquiry, for that basis must be both "available *and* adequate." *Shah Bros. v. United States*, 770 F. Supp. 2d 1367, 1369 (Ct. Int'l Trade 2011) (emphasis added). Nonetheless, even if § 1581(a) were considered viable, the relief it offers could never be adequate, which also renders that avenue useless. *See Miller & Co.*, 824 F.2d at 963 ("Where another remedy is or could have been available, the party asserting § 1581(i) jurisdiction has the burden to show how that remedy would be manifestly inadequate."). Section 1581(a) cases are limited to matters where an affirmative liquidation or other protestable event has injured an protestant by assessing duties against it in excess of

the amount lawfully owed, which the protestant has paid, and the relief available to the protestant for that injury is limited to refund of the excess duties paid by means of reliquidation. Appellants have not suffered this harm, for they have not been assessed or paid duties above what they lawfully owe. Instead, the harm Appellants suffered as of the date the suits were commenced, and continue to suffer, is the hostage of their rights to certainty in their liabilities and predictably in the processing of their customs obligations—harm that Congress has highlighted and sought to mitigate. A continuing violation of these rights cannot be remedied by § 1581(a) and the protest procedure, which can compensate for economic losses but not the losses that befall an importer while under the yoke of CBP.

The Customs Procedural Reform and Simplification Act of 1978, Pub. L. No. 95-410, 92 Stat. 888 ("Reform Act") significantly rewrote the United States' customs laws. One of the legislation's major objectives was "to modify numerous customs procedures to expedite the processing of goods and individuals while reducing administrative costs for the government." S. Rep. No. 95-778, at 1 (1978). Among other changes, section 209 of the bill advanced that objective by creating section 504 of the Tariff Act, which "put a 1-year limit on the time in which customs [*sic*] has to liquidate an entry." *Id.* at 4. Until then, "there [had been] no law requiring liquidation to be completed within a specific time period." *Id.* at 31. The Senate Finance Committee explained the reason behind the new statute:

The provisions adopted by the committee would increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs transaction. Under the present law, an importer may learn years after goods have been imported and sold that additional duties are due, or may have deposited more money for estimated duties than are actually due but be unable to recover the excess for years as he awaits liquidation. Surety companies, which are jointly liable with importers for additional duties, would be better able to control their liabilities. Sureties would also be better protected against losses resulting from the dissolution of their principals in instances where there has been undue delay in liquidating entries.

*Id.* at 32.[13]

When juxtaposed with the Senate's stated purpose, it is clear that the CIT opinion cannot be made compatible with Congressional intent. Congress enacted the deemed liquidation provision precisely because importers until then had to "await[] liquidation" for years, *ibid.*, but the CIT still demands that Appellants "*wait* until Customs concludes the investigation currently underway and file a protest before refiling this case under § 1581(a)," *Opinion* at 14 (emphasis added). This Court must reconcile this dissonance in favor of Congress, which can be done only by reversing the lower court's decision to refuse the complaints. Additionally, the conjecture that Appellants "cannot claim that the § 1581(a) remedy is manifestly inadequate as there is no meaningful assertion of harm in letting Customs process and liquidate their entries," *id.* at 13, further defies Congress. Despite the court's sentiment, Congress

---

[13] Undue "delay" in the face of "immediate injury and irreparable harm" to business has alone made § 1581(a) relief "manifestly inadequate." *U.S. Cane Sugar Refiners' Ass'n. v. Block*, 683 F.2d 399, 402 n.5 (C.C.P.A. 1982).

evidently felt that uncertainty of liquidation status is "meaningful" harm: the Congressional Budget Office (CBO) estimated that the new deemed liquidation provision would result in an annual customs revenue loss of $9.5 million—the largest sustained loss resulting from any single provision of the Reform Act. S. Rep. No. 95-778, at 37. Appellants' assertion of harm, to be clear, in letting CBP process and liquidate the entries if and when it pleases, after the entries have been deemed liquidated, is a complete lack of "control [over] their liabilities," and a total inability "to anticipate [additional] duties when pricing their products." *Id.* at 4.[14]

Moreover, the negotiations between the House and Senate impart Congress' intent to allow an importer to enforce the deemed liquidation right. Under present law, CBP is excused from giving notice of deemed liquidation. 19 U.S.C. § 1514(a) ("Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated."). Were CBP required to issue notice of a deemed liquidation, an action such as this would be unnecessary: the notice would substitute

---

[14] There are numerous reasons why an importer may want or need to seek judicial confirmation that an entry has been liquidated and made final by operation of law. The importer might wish to close its books of account for the fiscal year, and need to know whether to discharge an accrual being held for potential additional duties. The importer might have provided its customs bond surety with cash collateral for the bonds covering particular entries, and might wish a determination which would allow it to demand the collateral back from the surety; the importer might be looking to sell or refinance its business, secure bank financing, or otherwise engage in transactions for which an accurate identification of whether an entry, and liabilities flowing therefrom, are final or not is essential. Until and unless CBP liquidates, there will always be the specter of liquidation with the increased duties.

for the declaratory judgment as a confirmation of the importer's rights. But this alternative was explicitly declined. The Senate amended the original House bill to require that CBP provide notice of deemed liquidation, prompted by the concern that without such a notice "it is possible that many importers will not discover such an entry has been liquidated in time to make a timely protest" where the liquidation is adverse to the importer. S. Rep. No. 95-778, at 32. In conference, however, the Senate receded from that amendment. H.R. Rep. No. 95-1517, at 16 (1978) (Conf. Rep.). Congress granted importers and sureties the right of deemed liquidation, but decided to withhold this enforcement mechanism. Unless a court can entertain a claim such as Appellants', there is no way to vindicate that right.[15]

Twenty-six years later, Congress again amended 19 U.S.C. § 1504 as part of the Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. No. 108-429, 118 Stat. 2434 ("Corrections Act"). The same Senate committee explained that whereas until then the statute "provide[d] for import entries to be deemed liquidated if they have not been actually liquidated within a one-year period," what the final bill designates as section 1563(e) of the Corrections Act would amend the statute "by

---

[15] CBP has imposed on itself an directive to give notice of deemed liquidation, 19 C.F.R. § 159.11(a) (2011), but of course without enforcement or a penalty for failure to do so.

establishing a statutory time frame for the liquidation of drawback claims."[16]  S. Rep.

No. 108-28, at 170–71 (2003).  The purpose was largely the same:

> This provision clarifies limitations on liquidation by establishing a statutory time frame for the liquidation of drawback claims. Existing law only sets forth a time line for the liquidation of import entries and currently does not require the liquidation of drawback claims within a statutory time frame. As a result, drawback claims are generally not liquidated by U.S. Customs within a reasonable period of time and therefore remain outstanding for years. Thus, without liquidation, a contingent liability for U.S. businesses (*i.e.*, drawback claimant) is created for the amount of each drawback claim because U.S. Customs can challenge the drawback amount or value of the goods for which drawback was claimed until liquidation occurs.

> If drawback claims are never liquidated, for an open-ended time period the drawback claimant's claim unfairly remains subject to challenge by U.S. Customs. This creates an unwarranted liability and the possibility that the claimant will have to reimburse the U.S. Treasury any drawback monies paid to the claimant—even several years from when the claim was actually made and money was paid to the drawback claimant. This change would remove such liability overhanging drawback claimants by requiring U.S. Customs . . . to liquidate future drawback claims within a specified period of time, as U.S. Customs already does for merchandise entered for consumption.

*Id.* at 172–73; *see generally Ford 2011*, 806 F. Supp. 2d at 1334, 1336.  The CBO

predicted revenue loss resulting from this amendment as well.  S. Rep. No. 108-28,

at 189–90.

---

[16] Drawback entries deserve exactly the same considerations as import entries. *Ford 2011*, 806 F. Supp. 2d at 1335 n.8 ("Although the cases discussed in this paragraph involve consumption entries rather than drawback entries, the court discerns no reason why this would affect the jurisdictional analysis. *Compare* 19 U.S.C. § 1504(a)(1) *with id.* § 1504(a)(2).").

Congress would not have emphasized these rights if it did not intend an importer to have the ability to assert them in court proactively, on its own volition, rather than wait for an opening via protest. Protest jurisdiction is the first of two essentially reactive jurisdictional bases under which a deemed liquidation argument against an actual or potential belated assessment of additional duties conceivably can also be made, in addition and distinction to § 1581(i). The second is 28 U.S.C. § 1582 (1993), under which the CIT may entertain enforcement actions by the United States to recover certain civil penalties, customs bond obligations, or customs duties. Thus, an importer may wait indefinitely for CBP to liquidate an entry affirmatively, as above, allow the protest deadline to lapse, ignore CBP's demands for payment and penalty notices, and defend an enforcement action in court, where the importer can then interpose deemed liquidation as an affirmative defense against the Government's claim. These bases have been characterized as "conditional remedies," *Ford 2011*, 806 F. Supp. 2d at 1336. They might never come to pass, for only CBP can force the initial jurisdictional predicate.[17]

On that understanding, the effect of the holding below is to foster abuse and gamesmanship by CBP, of the kind this Court feared in *United States v. Cherry Hill Textiles, Inc.*, 112 F.3d 1550 (Fed. Cir. 1997), an enforcement action. CBP liquidated

---

[17] The CIT has aggregated this trinary list of jurisdictional bases. *E.g.*, *Ford 2011*, 806 F. Supp. 2d at 1336; *see generally Fujitsu I*, 110 F. Supp. 2d 1061.

the importer's entry with a rate advance after thirteen months, and demanded payment from the surety, who neither paid nor protested; the Government filed a complaint under § 1582, to which the surety answered that the entry had been deemed liquidated. *Id.* at 1551, 1558. The CAFC ordered the trial court to consider that defense. *Id.* at 1560–61. Reviewing the legislative history, this Court explained that the purpose of the deemed liquidation provision is "to place a limit on the period within which importers and sureties would be subject to the prospect of liability for a customs entry" and "to bring finality to the duty assessment process." *Id.* at 1559. As the contemporary Commissioner of Customs testified at the hearings on the Reform Act, the new § 1504 was designed to "eliminate unanticipated requests for additional duties coming years after the original entry"; the court understood that "[t]he effect of a 'deemed liquidation' is therefore to fix the liability of the importer or surety and, once that liability is discharged, to terminate the government's cause of action for the entry in question." *Ibid.* (citation omitted); *see also Mitsui & Co. (U.S.A.) v. United States*, 881 F. Supp. 605, 606–07 (Ct. Int'l Trade 1995) (relating the Commissioner's description of "the deemed liquidation provision as 'expected to be beneficial to both Customs and importers,' and as 'providing importers with additional protection'" (footnote omitted)). Requiring an importer to raise that fixture of liability by protest at some undefined time would subject the importer to CBP's mercy:

Customs could purport to liquidate an entry anew, years after the first liquidation had become final, and thereby impose liability on the importer or surety if the importer or surety were not vigilant in watching for notice of such untimely liquidations or if it were no longer able to undertake the burden of filing and pursuing a protest.

The potential for abuse from a rule requiring protests in such cases is sufficiently plain that we think it unlikely that Congress would have intended the protest requirement to apply so broadly.

*Cherry Hill*, 112 F.3d at 1560; *quoted in Ford 2011*, 806 F. Supp. 2d at 1336–37;

*Fujitsu I*, 110 F. Supp. 2d at 1073. Eternal vigilance for CBP action is necessary

because "all liquidations, whether legal or not, are subject to the timely protest

requirement. Without a timely protest, all liquidations become final and conclusive

under 19 U.S.C. § 1514." *Juice Farms*, *supra*, 68 F.3d at 1346; *see Fujitsu I* at 1072.

An importer bears the burden to watch for any notices of liquidation that would trigger

the protest period. *Juice Farms* at 1346.[18]

*Ford 2011* found the *Cherry Hill* rationale to be "instructive" in the context of

a declaratory judgment action under § 1581(i), 806 F. Supp. 2d at 1337 n.11, and

refused to sanction CBP's ignorance thereof. As opposed to hearing a proactive

declaratory judgment action, requiring an importer "to await affirmative liquidations

or enforcement actions"—the two reactive conditional remedies outlined—"could

---

[18] This is a dimension of the theme that decisions of CBP are "presumed to be correct," 28 U.S.C. § 2639(a)(1) (1980).

extend the 'unwarranted liability' that Congress sought to eliminate when it amended 19 U.S.C. § 1504 in 2004." *Id.* at 1336.

Under § 1581(i), the importer is the plaintiff by choice, wielding the deemed liquidation as a sword rather than only a shield, a right rather than only a defense. That is where Appellants stand, and, as discussed extensively *supra* part I, this Court's *Ford 2012 II* decision endorsed that posture. 688 F.3d 1319. Under § 1581(a), although the importer is the plaintiff, the argument is ultimately made only in reaction and acquiescence to CBP's coercion; in other words, the Government strikes first. Under § 1582, the importer obviously is the defendant, without control and able to use the argument only as a shield; again, CBP seeks to coerce payment. To grant such rights but bar any proactive security mechanisms for them by corralling an importer into conditional remedies cannot be the outcome that Congress intended, for "[a] right without a remedy is unknown to the law." *Barrett v. Holmes*, 102 U.S. 651 (1881).[19]

---

[19] This tension squares with the U.S. Supreme Court's understanding of the prophylactic nature of declaratory relief in general. "[W]here threatened action by government is concerned," a court will "not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat . . . . The dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) (emphasis omitted) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 152 (1967)). *See also, e.g.*, *Luckenbach S.S. Co. v. United States*, 312 F.2d 545, 550 (2d Cir. 1963) ("The declaratory judgment procedure . . . is also designed to permit the termination of a continuing actual controversy when that controversy might otherwise continue indefinitely."); *E. Edelmann & Co. v. Triple-A Specialty Co.*, 88 F.2d 852, 854 (7th Cir. 1937) ("It was the congressional intent to avoid accrual of

\* \* \*

The rights to certainty and control that Congress has recognized and promoted vested in Appellants at the end of the liquidation periods, upon the dates that the entries were deemed liquidated. Appellants have alleged that those vested rights have been violated, which ripened Appellants' causes of action, and they can continue to be violated without end by CBP until and unless Appellants can secure restraint in court. To this point CBP has done nothing to merit a protest that would eventually wind up before the court under § 1581(a), and there is no guarantee that it ever will. Therefore § 1581(a) is not available, and will never be adequate to address Appellants' purely non-economic injury. The trial court must hear Appellants' pleas under § 1581(i).

---

avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued.").

Consider, for instance, a natural-born U.S. citizen raised abroad who, upon reaching the age of majority, returns to the United States to live. Several years later, the government threatens to deport her for unlawful presence in the country. Under the lower court's logic, she could not seek a declaratory judgment from the court that she is a U.S. citizen to ward off the government, but rather would have to lie in wait for the government to prosecute deportation proceedings against her, where she can raise her citizenship as a defense. Were she to need confirmation of citizenship in order to vote, to work, or to enjoy any particular benefit appurtenant to an American national, she would have to wait for a deportation action to demand it in court. The Supreme Court, however, has endorsed the declaratory judgment option. *Perkins v. Elg*, 307 U.S. 325, 336 (1939).

## CONCLUSION

WHEREFORE, Appellants respectfully request that this Court vacate the CIT's

judgment of dismissal and remand the cases for further proceedings.

Respectfully Submitted,

   /s/ George W. Thompson

George W. Thompson
  *Counsel of Record*
Russell A. Semmel
NEVILLE PETERSON LLP
1400 Sixteenth Street, N.W., Suite 350
Washington, DC 20036
(202) 861-2959
Fax: (202) 861-2924
gthompson@npwdc.com

August 26, 2013

**FORM 19.  Certificate of Compliance With Rule 32(a)**

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑      The brief contains [            *9639*            ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐      The brief uses a monospaced typeface and contains [                    ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑      The brief has been prepared in a proportionally spaced typeface using [                *WordPerfect X5*                ] in [                *Times New Roman (size 14)*                ], or

☐      The brief has been prepared in a monospaced typeface using [                                ] with [ [                                ].

---
       /s/ Russell A. Semmel
---
                 (Signature of Attorney)

Russell A. Semmel
---
                 (Name of Attorney)

Counsel for Appellants
---
(State whether representing appellant, appellee, etc.)

August 26, 2013
---
                 (Date)

SLIP OP 13 - 35

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CHEMSOL, LLC, <br><br>          Plaintiff, <br><br>          v. <br><br> UNITED STATES, <br><br>          Defendant. | Before: Donald C. Pogue, <br>         Chief Judge <br><br> Court No. 11-00516 |
| MC INTERNATIONAL, LLC, <br><br>          Plaintiff, <br><br>          v. <br><br> UNITED STATES, <br><br>          Defendant. | Court No. 11-00517 |

## OPINION

[Defendant's motion to dismiss is GRANTED.]

Dated: March 20, 2013

     George W. Thompson, and Russell A. Semmel, Neville Peterson LLP, of New York, NY, for the Plaintiffs.

     Justin R. Miller, Michael Panzera, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for the Defendant. With him on the briefs were Stuart F. Delery, Acting Assistant Attorney General; Jeanne E. Davidson, Director; and Reginald T. Blades, Jr., Assistant Director. Of counsel on the briefs were, Yelena Slepak, Office of the Assistant Chief Counsel,

International Trade Litigation, U.S. Customs and Border Protection, and <u>Michael Panzera</u>, Office of the General Counsel, United States Trade Representative.

    **Pogue, Chief Judge:**  In these actions, Plaintiffs MC International, LLC ("MCI") and Chemsol, LLC challenge the United States Customs and Border Protection's ("Customs") extension of the statutory liquidation period for their entries of citric acid.  Plaintiffs seek relief declaring the extensions unlawful such that the entries have therefore been "deemed" liquidated by operation of law.  The Defendant moves to dismiss for lack of subject matter jurisdiction under USCIT Rule 12(b)(1) or, in the alternative, for failure to state a claim under USCIT Rule 12(b)(5).  Defendant's Memorandum in Support of Its Motion to Dismiss - MCI, ECF No. 23, at 1 ("Def. Mem. Supp. Mot. Dismiss MCI"); Defendant's Memorandum in Support of Its Motion to Dismiss - Chemsol, ECF No. 23, at 1 ("Def. Mem. Supp. Mot. Dismiss Chemsol").

    Because the statutory review process for challenging liquidation of Plaintiffs' entries under sections 514 and 515 of the Tariff Act of 1930, 19 U.S.C. § 1515-16,[1] and 28 U.S.C. 1581(a), provides an adequate remedy for Plaintiffs claims, the government's motion to dismiss for lack of subject matter

---

[1] All further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2006 edition.

jurisdiction is granted.

## BACKGROUND

Under 19 U.S.C. § 1504(a), Customs generally has one year within which to liquidate entries. If Customs fails to liquidate the entries during that one year period, the entries liquidate by force of law, that is, they are deemed liquidated. Entries that are deemed liquidated are assessed at the duty rates asserted by the importer of record at the time of entry. 19 U.S.C. § 1504(a). Before the one year time period elapses, however, Customs may extend the time in which it may liquidate an entry. Customs may only extend the time period for liquidating an entry three times, resulting in a total of four potential years before the entry will liquidate by operation of law. 19 U.S.C. § 1504(b);[2] 19 C.F.R. § 159.12(f).

The entries at issue in this proceeding were imported by MCI and Chemsol ("Plaintiffs"). Specifically, during 2009-2010, MCI made thirteen consumption entries consisting of citric

---

[2] In relevant part, § 1504(b) provides that "[t]he Secretary of the Treasury may extend the period in which to liquidate an entry if . . . the information needed for the proper appraisement or classification of the imported . . . merchandise, . . . or for ensuring compliance with applicable law, is not available to the Customs Service. . . ."

Court Nos. 11-00516 and 11-00517                    Page 4

acid from India.[3]  During 2009, Chemsol made six consumption

entries consisting of citric acid from the Dominican Republic.[4]

Id. at ¶ 19.

        In 2010, U.S. Immigration and Customs Enforcement

("ICE")[5] and Customs initiated an investigation to determine

whether Chinese citric acid was being transshipped through other

countries to evade antidumping and countervailing duties.  Def.

Mem. Supp. Mot. Dismiss MCI at 2; Def. Mem. Supp. Mot. Dismiss

Chemsol at 2.  Pursuant to this investigation, Customs issued

several requests to Plaintiffs for information (RFIs) for the

entries at issue and notices of action (NOAs) for certain of the

entries.  MCI Compl. ¶¶ 14, 16; Chemsol Compl. ¶ 13; Def. Mem.

Supp. Mot. Dismiss MCI at 2; Def. Mem. Supp. Mot. Dismiss Chemsol

at 2.  Plaintiffs allege that they provided a comprehensive

response to each RFI and NOA.  MCI Compl. ¶¶ 28, 33, 35, 40, 42;

---

[3] Port of Houston entries: 231-9117008-6 ("A"), 231-9117479-
9 ("B"), 231-9121489-2 ("C"), 231-9122919-7 ("D"), 231-9123057-5
("E"), 231-9124127-5 ("F"), 231-9124712-4 ("G"), 231-9125025-0
("H"), 231-9127234-6 ("I"), 231-9128716-1 ("J"); Port of Chicago
entries: 231-9124126-7 ("K"), 231-9126354-3 ("L"); Port of
Savannah entry: 231-9129043-9 ("M").

[4] Port of Houston entries: 791-6466126-0 ("A"), 791-6563184-
1 ("B"), 791-6628591-0 ("C"), 791-6669107-5 ("D"), 791-6720537-0
("E"), 791-6975108-2 ("F").

[5] ICE is the enforcement division of the Department of
Homeland Security and is responsible for investigating, among
others, alleged customs fraud.  See Pub.L. No. 107-296, § 1502,
2002 U.S.C.C.A.N. (116 Stat.) 2135, 2308, effective March 1,
2003; H.R. Rep. No. 37, 108th Cong. at 26, 1st Sess. 2003.

Chemsol Compl. ¶¶ 23, 24, 29.  Nonetheless, citing the continuing

investigation, Customs extended the deadline for liquidation on

Plaintiffs' entries, in some cases more than once.[6]

　　　　Faced with Customs' extensions, MCI and Chemsol

commenced this suit claiming that the extensions were unlawful

and void under 19 U.S.C. § 1504(b) and seeking declaratory relief

stating that the entries have been deemed liquidated pursuant to

19 U.S.C. § 1504(a).  MCI Compl. ¶ 3-4; Chemsol Compl. ¶ 3-4.

Plaintiffs assert that the court has jurisdiction under 28 U.S.C.

§ 1581(i)(4).[7]  As noted above, the government contends that the

_____

[6] Customs extended the deadline for liquidation once for all
of MCI's entries, a second time for Entries A-K, and a third time
for Entry A.  Def. Mem. Supp. Mot. Dismiss at "Exhibit A."
Following the second set of extensions, Customs did not issue any
further RFIs or NOAs to MCI prior to extending the deadline for
liquidation for Entry A the third time.  MCI Compl. ¶ 39. With
regards to Chemsol's entries, Customs extended the time frame for
liquidation twice and Chemsol's Entries A and B were extended a
third time.  Chemsol Compl. ¶¶ 22, 25, 28, 30.

[7] In relevant part, § 1581(i) provides that "[i]n addition
to the jurisdiction conferred upon the Court of International
Trade by subsections (a)-(h) of this section and subject to the
exception set forth in subsection (j) of this section, the Court
of International Trade shall have exclusive jurisdiction of any
civil action commenced against the United States, its agencies,
or its officers, that arises out of any law of the United States
providing for --

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of
merchandise for reasons other than the raising of revenue;

actions should be dismissed for lack of subject matter

jurisdiction or for failure to state a claim. Def. Mem. Supp.

Mot. Dismiss MCI at 1; Def. Mem. Supp. Mot. Dismiss Chemsol at 1.

Specifically, in its motion, Defendant claims that Plaintiffs

cannot assert § 1581(i) jurisdiction but rather must wait until

Customs affirmatively liquidates the entries and then file a

protest and subsequently seek review of any denial of the protest

pursuant to 28 U.S.C. § 1581(a) (2006).[8] Def. Mem. Supp. Mot.

Dismiss MCI at 6; Def. Mem. Supp. Mot. Dismiss Chemsol at 6.

Defendant additionally contends that the actions should be

dismissed for failure to state a claim under USCIT Rule 12(b)(5)

because affirmative liquidation is an element of a claim under 19

U.S.C. § 1514(a) and that element has not yet been satisfied.

Def. Mem. Supp. Mot. Dismiss MCI at 16; Def. Mem. Supp. Mot.

Dismiss Chemsol at 16.

        In the time that has elapsed since the commencement of

_____

(3) embargoes or other quantitative restrictions on the
importation of merchandise for reasons other than the protection
of the public health or safety; or

(4) administration and enforcement with respect to the matters
referred to in paragraphs (1)-(3) of this subsection and
subsections (a)-(h) of this section. . . ."

        [8] Section 1581(a) provides exclusive jurisdiction for this
court to review civil actions commenced to "contest the denial of
a protest" which is filed with Customs pursuant to 19 U.S.C.
§ 1514 and § 1515.

this action, ICE has completed its investigation and, but for
Plaintiffs' suit, Customs could complete its administrative
process and liquidate Plaintiffs' remaining entries.  Def.'s
Resp. to the Court's Feb. 28, 2013 Inquiry, ECF No. 49 at 1-2.
In addition, a few of Plaintiffs' entries auto-liquidated duty
free in Plaintiffs' favor and are therefore moot.  <u>Id.</u>

## STANDARD OF REVIEW

Plaintiffs bear the burden of establishing
jurisdiction.  <u>Rocovich v. United States</u>, 933 F.2d 991, 993 (Fed.
Cir. 1991) ("[the] party seeking the exercise of jurisdiction in
its favor[,] has the burden of establishing that [ ] jurisdiction
exists.") (citing <u>KVOS, Inc. v. Associated Press</u>, 299 U.S. 269,
278 (1936)).  Specifically, the party seeking jurisdiction under
1581(i) has the burden of showing that jurisdiction under any
other section of 1581 is manifestly inadequate.  <u>Am. Air Parcel</u>
<u>Forwarding Co. v. United States</u>, 718 F.2d 1546, 1549-51 (Fed.
Cir. 1983); 5 U.S.C. § 704 ("[F]inal agency action . . . for
which there is no other adequate remedy" is subject to judicial
review).

Unless jurisdictional facts are in dispute, the basis
of the court's determination is limited to the facts stated on
the face of the complaint, documents appended to the complaint,
and documents incorporated in the complaint by reference.  <u>See</u>

_Asahi Seiko Co. v. United States_, Slip Op. 09-131, 2009 WL
3824745 at *4 (CIT Nov. 16, 2009) (citing _Allen v._
_WestPoint-Pepperell, Inc._, 945 F.2d 40, 44 (2d Cir. 1991)).

        When reviewing a motion to dismiss for failure to state
a claim, the court "must accept as true the complaint's
undisputed factual allegations and should construe them in a
light most favorable to the plaintiff." _Bank of Guam v. United_
_States_, 578 F.3d 1318, 1326 (Fed. Cir. 2009) (quoting _Cambridge_
_v. United States_, 558 F.3d 1331, 1335 (Fed. Cir. 2009)).

        To survive a motion to dismiss for failure to state a
claim, "a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'" _Ashcroft v. Iqbal_, 556 U.S. 662, 678 (2009)
(quoting _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 570 (2007)).
To be plausible, the complaint need not show a probability of
plaintiff's success, but it must evidence more than a mere
possibility of a right to relief. _Id._ at 678.


                          **DISCUSSION**

        This court's jurisdiction is set forth in 28 U.S.C.
§§ 1581(a)-(i). The provision under which Plaintiffs have
brought their claim, § 1581(i), is considered the "residual
jurisdictional provision" and while it is "broad" in scope, it is
well settled that Congress did not intend for it to be used if

jurisdiction has been, is, or could be available under another
sub-section of § 1581. See Hartford Fire Ins. Co. v. United
States, 544 F.3d 1289 (Fed. Cir. 2008) (citing Int'l Custom
Prods. v. United States, 467 F.3d 1324, 1327 (Fed. Cir. 2006)).
Faced with the availability of the review process specified in
Sections 1581(a)-(h), the party seeking judicial review must
establish a reason to avoid use of those provisions, such as
futility or the inadequacy of the available administrative
remedy. See CHARLES H. KOCH, JR., ADMIN. L. & PRAC. § 12.22 (3d
ed.). As a result, to repeat, this court will not entertain a
claim under § 1581(i) where "another subsection of 1581 is or
could have been available, unless the other subsection is shown
to be manifestly inadequate." Hartford Fire Ins. Co. v. United
States, 544 Fd.3d at 1292; Int'l Custom Prods. Inc. v. United
States, 467 F.3d at 1327.

        In addition, when considering whether to assert
jurisdiction under § 1581(i), the Court of Appeals has instructed
this Court to look to "the true nature of the action" at the
outset of a proceeding in order to determine which avenue of
review is appropriate. Norsk Hydro Can., Inc. v. United States,
472 F.3d 1347, 1355 (Fed. Cir. 2006) (citation omitted).

        Here, the true nature of Plaintiffs' action is a
challenge to Customs' extensions of the time for liquidation.
But Customs' actions, as alleged in Plaintiffs' complaints, are

well within the four-year period allowed for extensions; Customs

continues to actively investigate the appropriate liquidation for

the entries.  Upon conclusion of that process and liquidation of

the entries, the importers will have ample opportunity to raise

any issues through the protest and judicial review process that

culminates in § 1581(a).  Section 1514(a) lists the decisions of

Customs that may be the subject of protests. Included are

decisions relating to "the liquidation or reliquidation of an

entry." 19 U.S.C. § 1514(a)(5).  It is therefore clear that the

Plaintiffs' challenge to Customs' extensions of the time for

liquidation may be brought, after liquidation, by filing a

protest and obtaining jurisdiction in this court under Section

1581(a).  Hilsea Investment Ltd. v. Brown, 18 CIT 1068, 1071

(1994) ("the court can review interlocutory decisions subsumed in

the final determination, including those related to methodology

or procedure"); 19 U.S.C. § 1514(a)(5) (permitting review of any

order or finding upon challenge to liquidation); 5 U.S.C. § 704

("A preliminary, procedural, or intermediate agency action . . .

not directly reviewable is subject to review on the review of the

final agency action").  Thus § 1581(a) provides a complete and

adequate remedy for any challenge to Customs' extensions after

liquidation is complete.

     Arguing that this Court must entertain their complaint

in this case under § 1581(i), Plaintiffs claim that their case is

controlled by <u>Ford Motor Co. v. United States</u>, 688 F.3d 1319

(Fed. Cir. 2012) ("<u>Ford</u>").  In <u>Ford</u>, the Court of Appeals for the

Federal Circuit held 1581(i) jurisdiction appropriate for a

deemed liquidation claim in which agency inaction was at issue.

The Plaintiff had filed reconciliation entries with Customs,

claiming a refund on overpayment of duties on its imports of

Jaguar brand automobiles.  Customs had not liquidated Ford's

entries at the time the complaint was filed in the CIT and the

initial one year time period for liquidation had passed.  Ford

sought a declaratory judgment that its entries were deemed

liquidated by operation of law.  The CIT declined to take

jurisdiction under § 1581(i), stating that the entries must be

liquidated and protests filed pursuant to § 1581(a).  <u>Ford Motor</u>

<u>Co. v. United States</u>, __ CIT __, __, 716 F. Supp. 2d 1302, 1311

(2010).  The Court of Appeals reversed the CIT's holding that

jurisdiction was not available under § 1581(i) on the basis that

§ 1581(a) jurisdiction was inadequate to address Customs' failure

to act.  The appeals court noted that at the time the lawsuit was

initiated, none of the liquidations had yet occurred,  <u>Ford</u>, 688

F.3d at 1323-24, and the § 1581(a) remedy was therefore not

available. <u>Ford</u>, 688 F.3d at 1328.

Plaintiffs claim that <u>Ford</u> is controlling because the

CIT acknowledged, albeit in dicta, that Customs attempted to

extend the liquidation period and the CAFC did not overrule that

portion of the CIT's opinion.  But this reliance is unavailing.
In <u>Ford</u>, the true nature of the Plaintiff's claim was a challenge
seeking a declaration that Customs' inaction had caused the
entries to be deemed liquidated.  Notably, the Plaintiff's
Complaint in <u>Ford</u> alleges that Customs did not extend the
liquidation period whereas here, both Plaintiffs acknowledge that
Customs acted to extend the liquidation period.  Ford Second
Amend. Compl., Court No. 09-00151, ECF 19 ¶ 68; MCI Compl. ¶ 3,
and Chemsol Compl. ¶ 3.

        The Court of Appeals, in <u>Ford</u>, did not face a scenario
such as that presented here, where Plaintiffs acknowledge that
Customs has taken affirmative action to extend the liquidation
time period.  Here, Customs has not extended liquidation beyond
the four-year period and then failed to respond to importer
inquiries about the status of entries.  Rather, Customs' act of
extending the liquidation period – and the administrative protest
that Plaintiffs may file once its entries have liquidated – is
precisely the type of agency action that is remediable by
§ 1581(a).  <u>See</u> <u>United States v. Utex Int'l, Inc.</u>, 857 F.2d 1408,
1409-10 (Fed. Cir. 1988) ("All findings involved in a district
director's decision merge in the liquidation.  It is the
liquidation which is final and subject to protest, not the
preliminary findings or decisions of customs officers.")
(internal quotation marks and citation omitted); <u>Dal-Tile Corp.</u>

v. United States, 24 CIT 939, 945 n.12, 116 F. Supp. 2d 1309,
1314-15 (2000).

   It is therefore apparent that this Court should not
entertain Plaintiffs' complaint here under § 1581(i).  Final
agency action has not occurred and the record shows that Customs'
investigation continues to be active and has not lapsed into
inactivity as it did in Ford.  The matter can be brought under
§ 1581(a) after the Plaintiffs' entries have liquidated and
Plaintiff has filed an administrative protest, should it continue
to feel at that point in time that it has been injured.  See
Hartford Fire, 544 Fd.3d at 1292.  In this context, Plaintiffs
cannot claim that the § 1581(a) remedy is manifestly inadequate
as there is no meaningful assertion of harm in letting Customs
process and liquidate their entries.

   Plaintiffs asserted during oral arguments that Customs'
demonstrated inactivity was sufficient to bring their case under
§ 1581(i) when it failed to request further information upon the
second and third extensions.  This argument is unavailing.  The
governing statute merely states that Customs "may extend the
period in which to liquidate an entry if [] the information
needed . . . is not available."  19 U.S.C. § 1504(b)(1).  It does
not specify from whom Customs must obtain the information.
Because the statute does not limit Customs' sources of
information, it therefore should be construed as encompassing

whatever data is "reasonably necessary for proper appraisement or classification" and not limited solely to information from the Plaintiffs.  See Detroit Zoological Soc.'y v. United States, 10 CIT 133, 138, 630 F. Supp. 1350, 1356 (1986); see also, St. Paul Fire & Marine Ins. Co. v. United States, 6 F.3d 763, 768 (Fed. Cir. 1993) (Customs' decisions carry a presumption of correctness which Plaintiffs may rebut with a preponderance of the evidence).

It is also important that, here, Customs' reason for extending the liquidation period for Plaintiffs' imports is to allow ICE time to conclude its investigation of possible transshipment of goods.  To allow Plaintiffs to interrupt the administrative process currently underway by providing declarative relief would severely undermine Customs and ICE's ability to conduct meaningful investigations into possible fraudulent activity.  Therefore, the court declines to entertain Plaintiffs' case under § 1581(i) and holds that Plaintiffs must wait until Customs concludes the investigation currently underway and file a protest before refiling this case under § 1581(a). See Hartford Fire, 544 F.3d at 1292.

The court does not rely solely on the nature of Customs' investigation, but rather on Customs' broad discretion concerning whether a liquidation extension is warranted and the presumption that its decisions are proper.  St. Paul Marine & Fire Ins., 6 F.3d at 768.  At this point in the proceedings,

before discovery has taken place and, indeed, when the record is
not yet fully developed because Customs has not completed its
decision-making process, the court finds no basis to accept
Plaintiffs' conclusory claims that Customs' extensions are
invalid and an abuse of discretion.

        Other decisions of this Court do not require a contrary
result.  In Ford Motor Co. v. United States, __ CIT __, 806 F.
Supp. 2d 1328 (2011) ("Ford II"), the Court of International
Trade permitted an importer to bring a deemed liquidation claim
in an action for declaratory judgment under 28 U.S.C. § 1581(i).
But there Customs had also lapsed into inaction and failed to
affirmatively liquidate the drawback entries at issue, some of
which were nearly 15 years old.  The plaintiff therefore
continued to face liabilities of uncertain magnitude and
duration.  Ford II, 806 F. Supp. 2d at 1334.  In those
circumstances, the court held that requiring the plaintiff to
wait for affirmative liquidation and then protest the liquidation
under 19 U.S.C. § 1514, and, if Customs denied the protest,
challenge that denial under 28 U.S.C. § 1581(a), would not
provide an adequate remedy.  Id. at 1336.  Clearly, Ford II did
not involve the kind of on-going administrative dispute about
extensions that is at issue here.

        Similarly in Fujitsu Gen. Am., Inc. v. United States,
24 CIT 733, 110 F. Supp. 2d 1061 (2000), aff'd 283 F.3d 1364

(Fed. Cir. 2002), the court stated in dicta that where an importer believes its entries were deemed liquidated under § 1504(d), and Customs has not actively liquidated the entries, the importer's only remedy is to seek a declaratory judgment confirming that there was a deemed liquidation under 28 U.S.C. § 1581(i). Id. at 739, 110 F. Supp. 2d at 1069. But the court in Fujitsu was considering whether jurisdiction would be appropriate after the administrative process had been completed for entries which were initially suspended from liquidation and then liquidated over a year after the suspension was lifted in violation of the timing requirement under § 1504(d). Id. at 737-9, 110 F. Supp. 2d at 1067-68. This situation is also unlike that at issue here.

        Finally, the court observes that in prior cases where the court has heard challenges to Customs' extensions of liquidation due to ongoing fraud investigations, it has done so under 1581(a). See Ford Motor Co. v. United States, 286 F.3d 1335, 1343 (Fed. Cir. 2002) (finding that Customs abused its discretion in extending the liquidation period when the record showed that the 44 month investigation period contained 36 months of inactivity). This case is therefore dismissed to allow Customs to complete the liquidation process and for Plaintiffs to

Court Nos. 11-00516 and 11-00517                                    Page 17

file an administrative protest, should they so choose.[9]

**CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss is **GRANTED**. Plaintiffs' complaints are dismissed. Judgment will be entered accordingly.

                                    ____/s/ Donald C. Pogue____
                                    Donald C. Pogue, Chief Judge

Dated: March 20, 2013
       New York, New York

---

[9] Because this case is dismissed pursuant to USCIT Rule 12(b)(1), the court does not reach the Defendant's motion to dismiss under USCIT Rule 12(b)(5).

SLIP OP 13 - 35

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CHEMSOL, LLC,<br><br>　　　　　　　Plaintiff,<br><br>　　　　　　　　　v.<br><br>UNITED STATES,<br><br>　　　　　　　Defendant. | Before: Donald C. Pogue,<br>　　　　　　Chief Judge<br><br>Court No. 11-00516 |
| MC INTERNATIONAL, LLC,<br><br>　　　　　　　Plaintiff,<br><br>　　　　　　　　　v.<br><br>UNITED STATES,<br><br>　　　　　　　Defendant. | Court No. 11-00517 |

<u>**JUDGMENT**</u>

     This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; now therefore, it is hereby

     **ORDERED** that Defendant's motions to dismiss for lack of subject matter jurisdiction under 28 U.S.C. § 1581(i) are **GRANTED** and Plaintiffs' complaints are **DISMISSED**.


                                              　　/s/ Donald C. Pogue
                                    Donald C. Pogue, Chief Judge

Dated: March 20, 2013
      New York, New York

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on | Aug 26, 2013 |
by:

☐ US mail
☐ Fax
☐ Hand
☒ Electronic Means
   (by email or CM/ECF)

| Russell A. Semmel |                    | /s/ Russell A. Semmel |
Name of Counsel                        Signature of Counsel

Law Firm | NEVILLE PETERSON LLP |

Address | 1400 Sixteenth Street, N.W., Suite 350 |

City, State, ZIP | Washington, DC 20036 |

Telephone Number | 202-861-2959 |

FAX Number | 202-861-2924 |

E-mail Address | rsemmel@npwny.com |

NOTE: For attorneys filing documents electronically, the name of the filer
under whose log-in and password a document is submitted must be preceded
by an "/s/" and typed in the space where the signature would otherwise appear.
Graphic and other electronic signatures are discouraged.